No. 37,035

NOAH RICHARDS, *Appellee*, v. J-M SERVICE CORPORATION (Respondent), THE TRAVELERS INSURANCE COMPANY (Insurance Carrier), *Appellants*.

(188 P. 2d 939)

Opinion filed January 24, 1948.

*Douglas G. Hudson,* of Fort Scott, argued the cause, and *Douglas Hudson* and *Howard Hudson,* both of Fort Scott, were with him on the briefs for the appellants.

*Pete Farabi,* of Pittsburg, argued the cause, and *Sylvan Bruner* and *Morris Matuska,* both of Pittsburg, *B. M. Dunham,* of Chanute, and *A. L. Foster,* of Parsons, were with him on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: Two questions are involved in this workmen's compensation case. The first is whether the district court erred in awarding compensation at the rate of $18 a week for not exceeding 415 weeks, when the total and continuing disability may have been caused in part by the recurrence of a left inguinal hernia, for which original hernia the claimant had been fully compensated, as a scheduled injury, under the workmen's compensation act. The second question is whether the court erred in modifying a memorandum decision which awarded the claimant the full sum of $500 for medi-

cal treatment, less the amount already paid for such purpose, by later providing in the journal entry of judgment that the claimant was entitled to an award for medical treatment in a sum of "not to exceed $500 . . ."

The claimant was injured on August 6, 1945, by being struck in the abdomen with a heavy shell which caused him to be thrown to or fall on the ground in such manner that he contends he received the injuries hereinafter set out. As one admitted result of the accident, the claimant suffered a double hernia. Soon thereafter he was operated on for the double hernia. He did not return to work. On May 8, 1946, claimant filed a claim with the workmen's compensation commissioner, in which he set forth that the nature and extent of his injuries were "Double rupture and body and all parts and members thereof injured or affected by injury." On December 6, 1946, the workmen's compensation commissioner approved an award in behalf of claimant which allowed him compensation in the amount of $475.20, which amount the commssioner found had been paid to the claimant. As a part of the award the commissioner also approved a finding by the examiner that the claimant then had a recurrence of the left inguinal hernia and was entitled to further compensation therefor at the rate of $18 a week for 13.2 weeks, or the total sum of $237.60, which should be paid in a lump sum. The commissioner further awarded medical, surgical and hospital care to the claimant for the repair of the left inguinal hernia in a total amount not to exceed $500 less the medical expense theretofore incurred.

While this court does not review the findings of the commissioner, it may be noted, for the purpose of clarity, that the claimant evidently contended before the commissioner that in addition to developing a double hernia as a result of the accident he also sustained injuries to his stomach and heart because the examiner's approved findings read: "The Examiner further finds no causal relationship between the present stomach ailment of the claimant, his abnormal heart condition, and the said accident." The claimant, the respondent and the insurance carrier all appealed from the award of the commissioner. After hearing arguments on appeal, the Honorable Ora D. McClellan as judge pro tem modified the award of the compensation commissioner and in connection therewith filed certain findings of fact and conclusions of law. In the findings of fact appears the following statement:

". . . that as the result of said accident on August 6, 1945, claimant suffered a recurrence of the left inguinal hernia and injuries to his stomach, back and heart, and other internal injuries; that as a direct result of said accidental injuries suffered by claimant on August 6, 1945, the claimant became and is totally disabled from performing manual and physical labor, and that the period of time that the claimant will be so disabled in the future is indefinite and problematical, and that by reason thereof the claimant is entitled to receive compensation at the rate of $18.00 per week from the herein named respondent and its insurance carrier for a period not to exceed 415 weeks from the date of one week after claimant's accident on August 6, 1945; that the compensation due to the date of this judgment, less the sum of four hundred seventy-five dolars and twenty cents ($475.20) compensation already paid to claimant, shall be paid in one lump sum; that the remainder of the compensation awarded shall continue to be paid at $18.00 per week . . ."

This court is limited to consideration of questions of law in workmen's compensation cases. The statute so provides. (See G. S. 1935, 44-556.) The first question of law presented is whether there was an entire want of evidence to support the trial court's findings. (See *Woodfill v. Lozier-Broderick & Gordon*, 158 Kan. 703, 149 P. 2d 620, and the even more recent cases of *Abbott v. Southwest Grain Co.*, 162 Kan. 315, 176 P. 2d 839, and *Cooper v. Helmerich & Payne*, 162 Kan. 547, 178 P. 2d 242.)

An analysis of the evidence in this case most favorable to the claimant, which is the only evidence this court may consider, reveals the claimant testified that three days before the accident occurred the company had assigned him the duty of lifting shells which weighed seventy-five pounds; as he started to pull off a shell another shell was slammed up against him which knocked the wind out of him and knocked his back against a trailer; he fell forwards on his stomach and his stomach struck a shell; immediately thereafter his back was hurting him and he "threw up"; he was taken to a hospital and following the operation for a double hernia he was sent back home; after he got out of the hospital it seemed there was a pulling pain in his stomach; as a result thereof he would get hungry every two hours and was informed by the doctor that his stomach ulcers were coming back; the pain in his left side got worse and he never was able to return to work following the injury he received in August. With respect to his condition at the time of the hearing he testified:

". . . I have pains in my back and sides. I have heart burn and my stomach gets to knotting and as long as I eat every two hours I get by all right. I have been on a diet ever since this injury. . . . The most of my

pain is right in the pit of my stomach, right side of my liver and left side and my back right in the middle of my back—it seems like there is a lump in the pit of my stomach; there is a big lump shown up in the left hand side of my groin. . . . I can't even take as much exercise as I use to take, have to do more sitting around; pain back here under my ribs, under my heart, and get short of breath. . . . I am not able to work, I get dizzy . . . spells, . . . pain in my left side right under my ribs and this pain extends and goes up to seems like plumb up into my throat and goes around into my back . . . at night I can't lay on my side, seems like I can hear my heart beating, got to lay on my back or right side. If I try to exert myself to any extent I get dizzy headed and seems like I am going to faint. I have pains . . . right over my heart; I never had any trouble with my heart, or the same kind of trouble that I now claim to have, before I was injured. I was able to go ahead and do my work and exert myself without having these pains and dizzy spells before I was injured . . ."

The medical testimony, favorable to the claimant, may be summarized as follows: Doctor Newman, who qualified generally and as having specialized in surgery, consultation work and the taking of X rays, testified:

". . . I took X rays of this man's stomach on August 14, 1946. The X rays of the stomach showed a marked deformity in the region of the duodenal cap which is an extension of the stomach ulcer in this area. . . . I also examined the claimant's heart; this consisted of checking his heart with a stethoscope and the ordinary checking with palpation, percussion and so on. I found an auricular fibrillation, the heart was irregular and somewhat enlarged, decompensated. After I examined this man I formed an opinion as to whether or not he was able to perform and carry on physical and manual labor and my opinion was that he was not."

The witness also testified that in his opinion the claimant would be totally disabled from performing manual and physical labor for an indefinite period of probably very long duration and that the accidental injury which the claimant received on August 6, 1945, was the cause of the claimant's disability. When the witness was asked how he associated the claimant's heart condition with the injury, the witness stated:

"Well, I think it is part of a general condition here. This blow in the abdomen undoubtedly with its complications that came along. stomach and this hernia, that it weakened him enough to bring on this heart condition."

The doctor also testified that in his opinion the claimant's condition of health was such that at the time of the hearing the recurring inguinal hernia probably should not be operated on. He was asked: "Will you state to the Commissioner the reason for that?" And answered: "Heart condition." The record is clear that the claim-

ant's heart condition did not exist in August, 1945, when he was first operated on but definitely started after July, 1946.

The examiner for the commissioner appointed a neutral physician who testified that in his opinion the only disability, which was attributable to the accident, the claimant had at the time of the hearing was the disability referable to the recurrent left inguinal hernia and that he did not believe that the claimant's heart trouble, the stomach ulcers or the arthritis of the spine was either caused by or permanently aggravated by the accident. The neutral physician also testified that the claimant was incapacitated from carrying on physical and manual labor and would likely continue to be in such condition for an indefinite period in the future. We note also that there was testimony introduced in behalf of the respondent and the insurance carrier to the effect that the claimant's incapacity was due to the heart trouble and the stomach trouble; that the claimant had suffered stomach trouble and had been in a bad physical condition for some time before the accidental injury occurred. But this court is not permitted to adopt the respondent's theory of the case upon conflicting evidence and, as shown, the record clearly develops in this case that there was substantial testimony introduced to support the finding of fact made by the trial court. If one qualified doctor testifies that an accident caused or aggravated a condition resulting in disability and the trial court sees fit to base a finding of fact upon such testimony, this court cannot change or disregard the finding even though ten or more other qualified doctors may have testified to the contrary. The final responsibility for reaching proper findings of fact in workmen's compensation cases, as in many others, rests upon the district courts. Such courts from the examination of transcripts should carefully consider the weight and preponderance of conflicting medical and other evidence, the reflected ability and integrity of witnesses, and reach results which will cast credit upon the impartiality and rectitude of judicial tribunals because this court cannot consider such elements in an effort to perpetuate the high respect and esteem for courts which should follow from the exercise of the responsibility. It is not and cannot be said by the appellants in the present case that the district court failed to follow adequate, substantial competent evidence. Such is not appellants' exact contention.

The appellants contend, however, that even though there may be testimony in the record which supports the finding of the trial court

that the claimant was totally disabled as a result of the accidental injuries, nevertheless, the claimant is limited to recovery for traumatic hernia by reason of specific provisions of the statutes. Appellants' argument in support of the contention is to the effect that G. S. 1945 Supp., 44-510, compels such conclusion. Appellants analize the section of the statute as follows: They argue that under proviso (20) of subsection (c) of section (3) of the statute, traumatic hernia must be regarded as a scheduled injury, and subsection (21) of the same statute provides:

"Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in paragraph 1 of this section [which refers to treatment and care of injured employees] and no additional compensation shall be allowable or payable for either temporary or permanent disability: . . ."

In addition to the statute appellants rely largely upon the case of *Rogers v. Board of Public Utilities*, 158 Kan. 693, 149 P. 2d 632. In such case a claimant who had suffered two traumatic hernias in one accident and upon whom it was not advisable to operate because of a diabetic condition which had existed for twelve years prior to the accident, was limited in recovery to twice the amount provided in the compensation act for a single traumatic hernia. But the opinion in such case, written by Mr. Justice Parker, very carefully points out that the claimant's injuries consisted of the scheduled injuries and no other injuries whatsoever. The second paragraph of the syllabus in the case expresses the point, and the opinion reads:

"No evidence is to be found in the record claimant suffered any other injuries as a result of the accident or that his diabetic condition was in any way affected or aggravated by those he did receive." (p. 694.)

In the present case the contrary appears and we have hereinbefore set forth the evidence pertinent to the point principally for the purpose of developing the factual difference in the two cases. Many of the citations given in the Rogers case, *supra,* also support the distinction between that case and the present one.

In our opinion the present case falls within the rule announced in *Chamberlain v. Bowersock Mills & Power Co.,* 150 Kan. 934, 96 P. 2d 684, 129 A. L. R. 654. In the last-cited case, the opinion by Mr. Justice Hoch so clearly demonstrates the erroneous conception of the statute asserted by the appellants that it is unnecessary to

prolong this opinion by an extended discussion of the matter. Again, in this case we do not have an instance of the "pyramiding of compensation." As was said in the Chamberlain case, *supra:*

"The rigid construction contended for by the respondent would seem equally to apply to a case where in the same accident the workman suffered both a permanent scheduled injury and another injury which caused total or partial temporary disability, but left no permanent ill effect. In other words, if respondent's interpretation is correct, an award for a scheduled injury would preclude any other compensation, even though there had been another and separate injury in the same accident." (p. 944.)

This court refused to follow such a construction of the statute in the cited case. It is true that in the present case the payment of compensation for the scheduled injury preceded the total disability while in the Chamberlain case, *supra,* the scheduled injury followed the termination of the period of total disability. Nevertheless, for the purpose of considering "pyramiding of compensation" the result is the same because in the instant case the district court credited the respondent and insurance carrier with the $475.20 which had been paid the claimant as compensation for the double hernia.

Appellants emphasize in this case that the district court, in allowing the claimant total and continuing disability, based the award on "recurrence of the left inguinal hernia and injuries to his stomach, back and heart, and other internal injuries" and insist that there is no way in the world in which anyone can determine from the evidence how much of the total and continuing disability was based upon the recurring hernia and how much was based upon the other injuries. Appellants state that such hernia must have substantially contributed to the continuing total disability since the claimant's medical expert testified that the recurrent hernia would alone totally disable the claimant from performance of manual labor and that, therefore, the allowance of additional compensation based in part upon a disability attributable to a scheduled injury results in the allowance of additional compensation for the hernias. In other words, appellants, in effect, contend that since the claimant had been paid the scheduled amount for his double hernia and his recurrent hernia contributes to his total disability for which he was allowed additional compensation, it follows necessarily that the claimant is being allowed a double recovery in part for the same injury. If we had before us an instance wherein a claimant had been allowed full compensation for all total temporary disability and

in addition thereto compensation for a hernia which caused part of his temporary disability, the point made by appellants might have more merit, but since in the instant case the court credited the appellants with the amount paid for the scheduled injuries, the duplication of compensation does not arise. It is apparent from the entire record the district court concluded from substantial evidence that as a result of the accident the claimant sustained a total disability which would continue for an indefinite period—not as a result of the hernias alone—but also as a result of the activation and aggravation of a stomach ulcer and other conditions which later caused the claimant to develop auricular fibrillation in his heart. In such circumstances it does not follow that merely because a scheduled injury may be a factor in complete disability, claimant's recovery is limited to the amount allowed by the statute for the scheduled injury.

Another asserted error arises by reason of the district court having included in the findings of fact which were filed as of July 9, 1947, the following:

"The court further finds that the claimant is in need of medical and surgical and hospital care, and claimant is awarded the sum of five hundred (500.00) dollars for same, less the sum already paid by the respondent and its insurance carrier . . ."

Appellants insist that such an entry was an entry of judgment and cite in support thereof *Gates v. Gates*, 160 Kan. 428, 434, 163 P. 2d 395, and *Mahoney v. Stavely*, 160 Kan. 792, 165 P. 2d 230.

In the present case the foregoing finding of fact was followed by a conclusion of law reading as follows:

"That judgment should be, and it is hereby, rendered in favor of the claimant, Noah Richards, and against the respondent and its insurance carrier in accordance with the above findings, *and as set out in the Journal Entry filed herein."* (Emphasis supplied.)

The journal entry was not filed until August 15. It was approved by counsel for the appellee but not by counsel for the appellants. Such journal entry provided that the claimant was entitled to "a further award of not to exceed $500 for medical care and treatment." At the time the court's findings of fact and conclusions of law were filed, no journal entry of judgment had been prepared and, consequently, the trial court must have been referring in the conclusion of law to a journal entry which would be later prepared and filed. Appellants insist that the change in the wording of the journal en-

try of judgment is a departure from and is inconsistent with the finding and decision previously made by the trial court and that the earlier entry was the judgment, and further that the subsequent journal entry was only formal evidence thereof. As a consequence, appellants vigorously contend that the attempt to modify the original judgment in the subsequent journal entry was erroneous in view of the ruling of this court in *Gray v. Hercules Powder Co.,* 160 Kan. 767, 165 P. 2d 447. In the cited case the district court, after holding the claimant had failed to prove that any permanent disability had resulted from the injury, attempted to vacate such a finding and award the claimant recovery for permanent partial disability in furtherance of a motion which had been filed to modify the award. This court held that the district court was without jurisdiction to make the modification which, in effect, completely changed the basis of the award, and a reversal necessarily followed. In the instant case, however, the appellants are not in a position to complain because even if we regard the findings of fact and conclusions of law, which were filed as of July 9, 1947, as being the judgment, the modification thereof in the journal entry works no hardship on the appellants. As was said in *Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 366, 139 P. 2d 846:

". . . Moreover, the finding as approved, works no hardships on the appellants. One of the theories of treatment for a workman is that he may be rehabilitated so he can go back into industry, and under G. S. 1941 Supp. 44-510 (1) appellants retain the right to question the reasonableness of, and the necessity for, medical services incurred in the future."

In the last-cited case, this court modified and affirmed the judgment in such manner that an allowance for $500 without limitation was changed to an award of not to exceed $500 for medical care and attention. The same procedure of modification was followed in *Orozco v. Central Coal & Coke Co.,* 121 Kan. 690, 249 Pac. 604. If we should conclude that the court must modify the finding of July 9, 1947, in this case, we would only be requiring the court to do again the same thing the court did when it signed the journal entry of judgment dated August 15. Consequently, there is no actual necessity for modification as the appellants' substantial rights are not affected. Any order of modification which we might make would only result in a change of dates and would not necessarily affect the taxing of costs incurred in the appeal.

The judgment of the district court is affirmed.