No. 41,290

Marvin Wammack, *Appellant,* v. Root Manufacturing Company, Inc., *Appellee,* Bituminous Casualty Corporation, Insurance Carrier, *Appellee.*

(336 P. 2d 441)

Opinion filed March 7, 1959.

· *Sylvan Bruner,* of Pittsburg, argued the cause, and *Charles J. Rondelli,* of Pittsburg, *Walter B. Patterson,* of Fort Scott, and *Joe L. Henbest,* of Columbus, were with him on the briefs for the appellant.

*R. L. White,* of Pittsburg, argued the cause and *R. L. Letton,* of Pittsburg, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Parker, C. J.: This was a workmen's compensation case. The commissioner found that as a result of accident sustained in the

course of his employment claimant sustained injury to his left thumb, resulting in total loss thereof by amputation between the distal and proximal joint, and injury to his right thumb, which resulted in the permanent loss of 50 per cent of its use. He also found injury was confined to the thumbs and should be compensated as two scheduled injuries. Thereupon he entered an award on that basis. Claimant appealed to the district court which approved the findings and award of the commissioner and entered judgment accordingly. Hence this appeal.

In a preliminary way it may be stated that this is one case where a factual statement is neither necessary nor required in order to understand and dispose of the appellate questions involved. Indeed, in the opening paragraphs of their brief, counsel for appellant frankly admit:

"This Appeal is limited to the following questions of law:

"1. The district Court erred as a matter of law in finding, holding and adjudging that the injury to claimant's right and left thumbs, injured simultaneously in the same accident, were single, separate and scheduled injuries and were compensable under the schedule section of the Compensation Law, Section 44-510 (3) (c) (6) (21) (23), 1955 Supp. General Statutes 1949.

"2. The District Court erred as a matter of law in failing to find, hold and adjudge that the injuries to the claimant occurring simultaneously and in the same accident to the claimant's left thumb and right thumb, were to two members of claimant's body and were unscheduled injuries, and constituted permanent partial disability to the body as a whole, and were covered and compensable as nonscheduled injuries under Section 44-510 (3) (a), (3) (c) (24), 1955 Supp. G. S. of 1949."

So obvious, as to almost preclude necessity for making it, is the statement that question (1) discloses the basis for the trial court's judgment and appellees' position with respect thereto; question (2) reveals the basic premise on which appellant founds his claims of error with respect to the judgment; and both questions, when read together not only divulge all appellate facts required but also make it appear that no issue is here involved respecting the amount of the award as computed by the trial court if its judgment is affirmed.

Detailed reference to the provisions of our workmen's compensation act, as set forth in the foregoing questions, are essential to a proper understanding of the questions involved for to merely refer to them by section numbers would entail untold research on the part of readers of this opinion and doubtless lead to much confu-

sion. For that reason they should be quoted, as they appear in applicable provisions of G. S. 1955 Supp., at some length.

The section of the statute providing for compensation is 44-510. Pertinent portions thereof, on which the award was based and are here relied on by appellees in its support, read:

"(3) *Where death does not result from the injury.*

"(3) (a) Where total permanent disability results from the injury, no compensation shall be paid during the first week of the disability, except that provided in paragraph 1 of this section, but after the expiration of said first week, payment shall be made as provided herein during such permanent total disability . . ."

"(3) (c) Where disability, partial in character but permanent in quality, results from the injury, the injured workman shall be entitled to the compensation provided in paragraph 1 of this section, but shall not be entitled to any other or further compensation for or during the first week following the injury. Thereafter compensation shall be paid as provided in the following schedule, . . .

"(3) (c) (6) Loss of the first phalange of the thumb or of any finger shall be considered to be equal to the loss of one-half of such thumb or finger, and the compensation shall be one-half of the amount specified above. . . . The loss of the first phalange and any part of the second phalange of the thumb which includes the loss of any part of the bone of such second phalange, shall be considered to be equal to the loss of the entire thumb. . . .

"(3) (c) (21) . . . For the permanent partial loss of the use of a finger, thumb, hand, arm, toe, foot or leg or the sight of an eye or the hearing of an ear, compensation shall be paid . . . during that proportion of the number of weeks in the foregoing schedule provided for the loss of such finger, thumb, hand, arm, toe, foot or leg, or the sight of an eye or the hearing of an ear, which partial loss thereof bears to the total loss of a finger, thumb, hand, arm, toe, foot or leg, or the sight of an eye or the hearing of an ear; . . .

"(3) (c) (23) Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in paragraph 1 of this section, no additional compensation shall be allowable or payable for either temporary or permanent disability: . . ."

Pertinent portions of the section (44-510) on which appellant relies to sustain his position, under the allegations of question (2), read:

"(3) (a) (Portions thereof hereinabove quoted) . . . The payment of compensation for total permanent disability shall not extend over a period exceeding eight (8) years from the date of injury. Loss of both eyes, both hands, both arms, both feet, or both legs, shall, in the absence of proof to the contrary, constitute a total permanent disability. . . .

"(3) (c) (24) Should the employer and the employee be unable to

agree upon the amount of compensation to be paid in any case of injury not covered by the schedule, the amount of compensation shall be settled according to the provisions of this act as in other cases of disagreement: *Provided, however,* in case of temporary or permanent partial disability not covered by schedule the workman shall receive during such period of temporary or permanent partial disability not exceeding four hundred fifteen (415) weeks, sixty percent (60%) of the difference between the amount he was earning prior to said injury as in this act provided and the amount he is able to earn after such injury in any employment  . .  ."

Having established the essential facts, the issues of law, and the pertinent statutes involved, it can now be said the essence of all contentions advanced by appellant as the basis for reversal of the judgment is that the injuries to appellant's right and left thumbs, arising from the same accident, are not single and separable injuries subject to the scheduled provisions of the compensation act, identified in question (1), but are and should be held to be unscheduled injuries which, under provisions of the statute set forth by him in question (2), are to be measured as disability to the body as a whole, and as a permanent partial disability not covered by any schedule. So, stated in a more definite and concise manner, it appears the crux of this appeal is whether the injuries, limited to appellant's two thumbs, are compensable under the compensation act as two scheduled injuries or as to an injury to his body as a whole.

In approaching its consideration it can be stated, at the outset, the sole appellate issue here involved presents no new or novel question in this jurisdiction. Indeed we are inclined to the view it was decided by this court in *Rogers v. Board of Public Utilities,* 158 Kan. 693, 149 P. 2d 632, where, in giving consideration to the force and effect to be accorded provisions of the compensation act relating to compensation to be paid for scheduled injuries, we held:

"The provisions of G. S. 1943 Supp., 44-510 (3) (c), which allow the recovery of compensation for traumatic hernia, do not limit that recovery to a single hernia, and where a workman while engaged in the performance of his duties suffers injuries in an accident which result in the sustaining of two separate and distinct hernias he is entitled to compensation for each of the injuries so received.

"When a workman is entitled to compensation for injuries scheduled under subdivision 3(c) of the section of the statute referred to in the preceding paragraph of the syllabus, and such injuries consist of scheduled ones and of them alone, the compensation authorized under the terms of such subdivision for disability resulting from them is exclusive of all other provided for in the compensation act, and the commissioner or trial court is without jurisdiction

to make an award on any other basis than that provided for therein." (Syl. ¶¶ 1, 2.)

And in the opinion said:

"It is first argued that since the language found in this subdivision is 'for traumatic hernia' its scope is limited to one hernia only and precludes the allowance of compensation for two hernias as scheduled injuries when they follow as the result of one accident. This argument if pursued to its ultimate conclusion requires allowance of compensation for disability resulting from two hernias under 3 (b) of some other provision of the act without regard to the provisions of 3 (c). We cannot concur in any such view and see no more legal justification for differentiation between two hernias than we do between the loss of two great toes, two thumbs or two first fingers in any one accident. In reaching that conclusion we are guided by a familiar rule of statutory construction. G. S. 1935, 77-201 (3), reads:

" 'Words importing the singular number only may be extended to several persons or things, and words importing the plural number only may be applied to one person or thing. . . .'

"It is a matter of common knowledge that in the absence of some unusual condition—as in this case diabetes—a hernia, or in fact two hernias, are curable by scientific means and their result so far as disability is concerned is no more partial in character and permanent in quality, if as much so, than the loss of the members heretofore referred to. Neither does the fact the legislature saw fit to speak in the singular in one schedule and in the plural in another mean that one cannot recover compensation for two specific injuries suffered in the same accident if but one is listed in the singular number in the schedule. We believe it was the intention of the legislature to allow recovery of compensation for two hernias under the same schedule in the same manner recovery is permitted for the loss of any two of the other members of the body hereinbefore mentioned. . . ." (p. 698.)

Appellant relies on three cases to sustain his position the trial court erred in refusing to hold the involved injuries were not compensable as unscheduled injuries, i. e., *Honn v. Elliott,* 132 Kan. 454, 295 Pac. 719; *Hurst v. Independent Construction Co.,* 136 Kan. 583, 16 P. 2d 540; *Stanley v. United Iron Works Co.,* 160 Kan. 243, 160 P. 2d 708. We have no quarrel with these decisions. Even so we believe that upon careful analysis they are clearly distinguishable, from the standpoint of facts and principles here involved, and for that reason cannot be regarded as controlling precedents in this case. Moreover, we do not subscribe to his view that such cases reach decisions which are in conflict with or contrary to our decision in the Rogers case. To illustrate:

In the Honn case a workman sustained a compensable injury to both his feet. We held that compensation should not be computed as a scheduled injury to each foot, but should be computed under

the provisions of the statute providing compensation for the loss or injury of both feet. Resort to the opinion, as well as the syllabus, discloses such holding is based squarely upon the provisions of what is now 44-510 (3) (a), as heretofore quoted, prescribing compensation for loss of both eyes, both hands, both arms, both feet or both legs. In fact the opinion points out that, notwithstanding other provisions of the same section relating to schedule injuries, the legislature had seen fit to make dual losses to such members compensable on the basis of total disability in the absence of proof to the contrary. It is to be noted the provisions of the portion of the act just referred to fail to include the loss of two thumbs, hence they afford no basis for a conclusion compensation for injuries to such members are compensable under their terms. Indeed, to hold otherwise would result in reading something into this portion of the act which is not there.

The most that can be said for the Hurst case from the standpoint of appellant's position is that it cites the Honn case with approval and then proceeds to hold that the rule therein announced has no application under the existing facts and circumstances.

The Stanley case requires little if any comment. It was here on appeal by an employer from a district court's judgment allowing an employee an award for scheduled injuries. We affirmed the judgment, holding that permanent partial loss of the sight of an eye and hearing in the ears came within the purview of G. S. 1943, Supp., 44-510 (3) (c) (19) [now G. S. 1957 Supp., 44-510 (3) (c) (21)] and were disabilities compensable as scheduled injuries. It is interesting and of some significance to note that in the opinion we said:

"Here the court found that as a direct result of an accidental injury to claimant's head and brain he sustained permanent partial loss of sight in one eye and hearing in both ears. The disability having resulted from the injury and to scheduled members the claimant was entitled to compensation for each under G. S. 1943 Supp., 44-510 (3c-19). To hold otherwise would not only violate the rule the statute must be liberally construed but would do violence to the spirit and intent of the compensation act itself." (p. 254.)

In an attempt to avoid the import of our decision in *Rogers v. Board of Public Utilities,* supra, appellant argues that what is there said on page 698 of the opinion, as heretofore quoted, with respect to no legal justification or differentiation between two hernias, two great toes, two thumbs or two first fingers in any one accident, is to be treated as *obiter dictum* and should be disregarded. We disagree.

In the opinion of that case we were, as heretofore indicated, giving consideration to the force and effect to be accorded provisions of the workmen's compensation act relating to compensation to be paid for scheduled injuries, particularly dual injuries sustained in one accident; we expressly stated that it was the intention of the legislature to allow compensation for two hernias under the same schedule, in the same manner recovery is permitted for the loss of any two of the other members of the body, mentioned in such opinion, including thumbs; and in the syllabus, in stating the law of the case, we intended to and did hold that two injuries of the character discussed and referred to in the heretofore quoted portion of that opinion, even though but one was listed in the singular number in the statutory schedule, were separate and distinct schedule injuries, for each of which the claimant in a workmen's compensation proceeding was entitled to compensation under facts and circumstances similar to those here involved.

We find nothing in the decisions relied on or in arguments advanced by appellant to warrant the overruling of *Rogers v. Board of Public Utilities,* supra, and what is there said and held compels a conclusion that, under the facts and circumstances of this case, the trial court's judgment, in holding the appellant's injuries were scheduled injuries and therefore compensable as such under existing provisions of the workmen's compensation act, was proper and should be upheld. It follows its judgment must be affirmed.

In reaching the conclusion just announced we have not overlooked arguments advanced by appellant to the effect circumstances may exist where injustice will result to an employee, under our construction of the statute. We can visualize other situations where such construction would be to his benefit. Be that as it may, and conceding the point made by appellant without deciding it, his remedy is by appeal to the legislature, not to this court. Long ago in *Anderson v. Oil & Refining Co.,* 111 Kan. 314, 316, 206 Pac. 900, recently quoted with approval in *Marquiss v. Bilwil Mining Co.,* 166 Kan. 420, 424, 202 P. 2d 194, and *Riggan v. Coleman Co.,* 166 Kan. 234, 200 P. 2d 271, we said:

". . . It was competent for the legislature to make classifications of disabilities and prescribe the rules to be applied in measuring the compensation for each class. The legislature prescribed a measure for certain scheduled disabilities, and a different rule for partial disabilities not scheduled. The fact that the application of these rules may seem to some to operate unjustly, requires a close scrutiny of the act to ascertain the legislative intent, but

affords no ground for the court to substitute rules different from those enacted by the legislature. If the practical operation of the law is found to bring disproportionate or unjust results, it may be assumed that the legislature will amend it, but this is a function which belongs alone to that body. . . ." (p. 316.)

The judgment is affirmed.